Patrick CATRONE, Plaintiff-Appellee,

v.

MASSACHUSETTS STATE RACING
COMMISSION et al.,
Defendants-Appellees,

Ogden Suffolk Downs, Inc.,
Defendant-Appellant.

No. 75–1477.

United States Court of Appeals,
First Circuit.

Argued April 5, 1976.

Decided May 18, 1976.

**670**

Roger P. Stokey, Boston, Mass., with whom Francis C. Lynch and Goodwin, Proctor & Hoar, Boston, Mass., were on brief for Ogden Suffolk Downs, Inc., appellant.

Herbert D. Lewis, Boston, Mass., with whom Lewis & Lewis and Howard J. Alperin, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Patrick Catrone, a trainer of race horses, brought this civil rights action[1] after he was ejected by appellant, Ogden Suffolk Downs, Inc. from its race track. The district court entered an order permanently enjoining appellant from depriving Catrone of access to Suffolk Downs on the basis of the charges that had been brought against him. 404 F.Supp. 765 (D.Mass.1975). This appeal followed.

Appellant's Director of Security, Frisoli, ejected Catrone from Suffolk Downs on February 3, 1975, following an argument between Catrone and a security guard. Frisoli's decision was sustained by management and by the three track stewards who, after hearing, ordered that Catrone be suspended indefinitely. Catrone then appealed the stewards' ruling to the Massachusetts State Racing Commission which, after a further hearing, ordered that Catrone be fined $50 and "reinstated to good standing as of this date". Catrone paid the fine, but appellant then and now has refused to readmit him.

In late March of 1975 the State Racing Commission again had occasion to consider Catrone. This time the question was whether to suspend his trainer's license because he had been indicted for a federal crime. The Commission voted to suspend the license but in July, 1975, ordered him restored "to good standing" after he was found not guilty by a federal jury.

Catrone originally brought this action against the State Racing Commission, protesting suspension of his license because of the criminal indictment. But by the time of the court's hearing that resulted in the present injunction, the Commission had not only reversed the stewards' ejection order but had restored Catrone's license. The case therefore continued only against appellant, which had been added as a defendant.

After hearing, which included the testimony of Catrone, Frisoli and others, the district court ruled that notwithstanding appellant's status as a private corporation, its exclusion of Catrone from Suffolk Downs was "state action" for purposes of 42 U.S.C. § 1983. It rested this conclusion on an examination of Massachusetts' comprehensive legislative scheme for regulating the licensing and operation of race tracks. 404 F.Supp. 767–68. The court further held that excluding Catrone was under the circumstances so "arbitrary and capricious" as to deny him both equal protection and due process of law. Going beyond the preliminary relief that was originally the subject of the hearing, the court permanently enjoined appellant from barring Catrone.[2]

---

1. Jurisdiction was invoked under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

2. From the record it is unclear whether the parties were ever advised that the hearing was one on the merits rather than for preliminary relief. No question is raised as to the adequacy of the hearing, but courts should make clear as a matter of record whether a preliminary hearing is to be treated as one on the merits.

■ As indicated below, we believe that Catrone's showing entitled him to interim injunctive relief. But we think the district court should have abstained from adjudicating the merits of his constitutional claims until his rights under state law could be submitted to the state courts. The rules of horse racing adopted by the Massachusetts State Racing Commission, and the governing state statute, Mass. G.L. c. 128A, indicate the presence of a substantial unresolved state law question which, if decided, might render moot, or present in a different posture, the federal constitutional issues. *Colorado River Water Conservation District v. United States,* —— U.S. ——, ——, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483, 495–496, 44 U.S.L.W. 4372, 4376 (1976), *quoting County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163, 1166–67 (1959). The unresolved state question is whether the State Racing Commission's ruling reversing the stewards' exclusionary order requires appellant to admit Catrone. On the one hand, § 10A of Mass. G.L. c. 128A purports to allow persons licensed to conduct a horse racing meeting the right to bar anyone. On the other, § 9A gives the Commission power over the licensing of trainers; and the Commission's regulations furnish a comprehensive scheme under which race track stewards exercise independent power, reviewable by the Commission, with respect to the licensing and exclusion of trainers. *See* 404 F.Supp. at 767–68. Arguably, the power of the stewards and the Commission to discipline and bar trainers is exclusive, and § 10A applies only to the barring of others. Especially as expulsion from Suffolk Downs means exclusion not only from the one thoroughbred track in Massachusetts but, quite possibly, from other race tracks around the country, *id.* at 767, the Massachusetts courts may find that state law gives to the State Racing Commission, under the procedures set forth in its rules, the final say over Catrone's right to train at Suffolk Downs.

■ As Catrone may thus be entitled by state law to be readmitted to the track, we do not think that a federal court should first decide unsettled constitutional claims involving application of the abstruse "state action" concept. Where cases can be decided without reference to federal constitutional questions, that is the preferred course, *Siler v. Louisville & N. R. R.,* 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753, 758 (1909); *see Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936) (Brandeis, J., concurring). This is especially so where the constitutional claims have at their root an alleged denial of due process, but the nature of the process that the state affords is unclear. And where, as here, resolution of the ambiguity in state law requires construction of state administrative as well as legislative policy, we think the proper course is for the federal court to abstain, while retaining jurisdiction, *Carey v. Bert Randolph Sugar and Wrestling Revue, Inc.,* —— U.S. ——, 96 S.Ct. 1208, 47 L.Ed.2d 587, 44 U.S.L.W. 4416 (1976); *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ Appellant argues that Catrone's voluntary dismissal of three prior state court actions constituted a previous state adjudication under Rule 41(a)(1) of the Massachusetts Rules of Civil Procedure which should also bar his federal claims. Each action, however, arose at a different stage in Catrone's ongoing struggle and is claimed to have served a separate purpose. It is possible that Massachusetts courts would view them as presenting different claims and hence as not amounting to an adjudication on the merits under Rule 41(a)(1). Whether this is so is a further question of state law on which a state adjudication would be preferable. We therefore refrain from addressing the effect of the Rule on the federal proceedings at this time.

We thus vacate as premature the district court's rulings with respect to the merits of Catrone's federal claims, and remand with directions to abstain until the parties have had an opportunity to seek a construction of state law from the state courts with respect to appellant's right to exclude Catrone in the face of the State Racing Commission's rulings.

■ Ordinarily, having decided that the district court should abstain, we would stop. Here, however, we think that the considerations of equity and fairness which no doubt prompted the district court to order Catrone's permanent readmittance to Suffolk Downs strongly suggest the propriety of granting preliminary injunctive relief during the period that the district court, retaining jurisdiction, awaits the state outcome. Catrone is an individual litigant whose livelihood is at stake. The burden upon appellant of putting up with his presence at its race track seems minimal compared with that upon Catrone if he is kept out. The state agency having charge of horse racing and the licensing of trainers has already ruled in his favor on the very dispute leading appellant to bar him. And should appellant be right that notwithstanding the Commission's ruling, it possesses absolute discretion to bar Catrone, then, as the district court's decision indicates, there is substantial likelihood that Catrone has a meritorious federal constitutional case.

In so saying we are careful to refrain from passing in any final sense on the merits of Catrone's federal claims at this time, and we expressly do not indicate either approval or disapproval of the district court's analysis of the constitutional issues. Nonetheless, given appellant's uniquely regulated status, it is not unlikely that appellant would be held a state actor when it invokes § 10A to exclude trainers and other similar racing personnel from its facilities. *See Lavoie v. Bigwood,* 457 F.2d 7 (1st Cir. 1972). *But see Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). If so, for appellant to bar a trainer for alleged misconduct without any form of hearing or process, and, indeed, in total disregard of the end result of the process that was afforded, could well run counter to the due process clause of the fourteenth amendment. *See Raper v. Lucey,* 488 F.2d 748 (1st Cir. 1973). Here, it is true, Catrone received a hearing before the track stewards, two of whom were appellant's appointees. But the stewards' ruling was reviewable by the Commission, which then effectively reversed it. Having chosen to reject the end result, appellant can scarcely rely upon the stewards' hearing—the only hearing provided—as affording due process. In sum, the constitutionality of appellant's asserted power to bar without process licensed trainers from its track seems to us doubtful enough to support the issuance of federal preliminary relief in a case where the other equities so strongly favor it.

Upon remand, the district court is authorized to issue a preliminary injunction that will reinstate Catrone pending the outcome of this litigation. The district court is not limited to the wording of its permanent injunction (which appellant now argues, rightly or wrongly, was unclear in its details). And should new data or changing circumstances so indicate, the court shall have the usual discretion to modify, amend or even vacate its preliminary injunction. We do not view our action in this case as necessitating remand to a district judge different from the one who previously handled it. *Cf. Halliday v. United States,* 380 F.2d 270, 272–73 (1st Cir. 1967), *aff'd on other grounds,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

We trust that the parties will cooperate in taking prompt and effective steps to secure a state adjudication. *See Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 30–31, 79 S.Ct. 1070, 1073–4, 3 L.Ed.2d 1058, 1063–4 (1958). We note that the State Racing Commission, while no longer formally involved, retains a substantial interest in this litigation, and through the Attorney General may well wish to cooperate with the active parties in seeking resolution of the unsettled issues of state law.

*Vacated and remanded for further proceedings consistent herewith. No costs at this time.*